In the Matter of the Welfare of
**Mark J. LARSON.**

**No. C8–86–499.**

Court of Appeals of Minnesota.

June 3, 1986.

Gregory E. Korstad, Isanti County Atty., Anne M. Taylor, Asst. County Atty., Cambridge, for respondent Isanti County Family Services.

Tom Foley, Ramsey County Atty., Richard H. Hoffman, Asst. County Atty., David Steinkamp, Certified Student Atty., St. Paul, for appellant Ramsey County Community Human Services Department.

Heard, considered and decided by POPOVICH, C.J., and PARKER and CRIPPEN, JJ.

## OPINION

POPOVICH, Chief Judge.

Isanti and Ramsey Counties dispute responsibility for the costs of Larson's care at Cambridge State Hospital. A 1975 determination by the Department of Public Welfare (now Human Services) finding Isanti County responsible was never appealed. In June 1985, Isanti County sought reconsideration by the department, which was denied as untimely. Isanti County then asked the committing trial court to determine financial responsibility.

On February 24, 1986, the Isanti County District Court found it could not review the 1975 agency decision, but concluded that it was authorized to determine Larson's "county of residence for the purpose of assigning responsibility for the costs of commitment and future costs of care." The trial court allocated all future costs to Ramsey County, which seeks review. We affirm in part and reverse in part.

## FACTS

Mark Larson is 37 years old and has lived in institutions most of his life. He is retarded and was first committed from Hennepin County in 1959. When his family moved to Massachusetts in 1963, Larson was discharged from the state hospital and also moved to Massachusetts.

In 1973, after his family returned, Larson was committed from Ramsey County to Hastings State Hospital as a *mentally ill* person. After eight months, he was administratively transferred to Cambridge State Hospital in Isanti County as a *mentally retarded* person. The hospital immediately applied to Ramsey County for payment of benefits, which the county denied, claiming Isanti County was responsible. Isanti County also denied benefits and the question went to the Department of Public Welfare for decision.

In July 1975, the department found Isanti as the "county of financial responsibility" and ordered Isanti to establish a medical assistance grant for Larson. No appeal was ever taken from that decision, but in June 1985 Isanti County's request for reconsideration of the 1975 decision was denied as untimely.

Larson was formally committed to Cambridge State Hospital, where he had resided since 1974, as a *mentally retarded* person in August 1985. Following the commitment hearing, the trial court considered Isanti County's request to determine future financial responsibility for the costs of hospitalization. Ramsey County appeals from the trial court's February 1986 determination.

## ISSUES

1. Was the 1975 Department of Public Welfare decision on financial responsibility binding upon the trial court?

2. Does Minn. Stat. § 253B.23, subd. 1(b) (1984) authorize a trial court to redetermine the county of financial responsibility despite a prior agency determination?

## ANALYSIS

1. When Isanti and Ramsey Counties both denied liability for benefits in 1974, the Department of Public Welfare determined Larson's "county of financial responsiblity" with reference to Minn.Stat. § 256B.02, subd. 3 (1974). If an applicant had lived in Minnesota "for one year of unexcluded time," the county in which he had lived would be responsible for the costs of hospitalization. *Id.* subd. 3(a). "Excluded time" meant time spent in a hospital, boarding home, or similar institution. *Id.* subd. 2. The department found since Larson's return to Minnesota in 1973, he had resided solely in "excluded time" institutions. Accordingly, as an applicant who had not resided in Minnesota "for any period of unexcluded time, the [responsible] county [was that] in which he reside[d] at the time of making application." *Id.* subd. 3(c). Since Larson resided at Cambridge State Hospital in Isanti County, the department in 1975 ordered Isanti County to establish a medical assistance grant for him. No appeal was taken and Larson has continuously resided at Cambridge State Hospital.

Where a county fails to timely appeal a decision of the Commissioner of Public Welfare, the trial court lacks jurisdiction to review that decision and any resulting judgment by the trial court is void. *County of Hennepin v. County of Becker,* 271 Minn. 213, 215, 135 N.W.2d 739, 740 (1965). The trial court properly found it could not review the Commissioner's decision more than 10 years after it issued, when Isanti County failed to timely appeal.

2. Although concluding the 1975 decision could not be reviewed, the trial court then determined Larson's county of residence to be Ramsey County, relying on Minn.Stat. § 253B.23, subd. 1(b) (1984), inferring authority to allocate future costs of care.

Minn.Stat. § 253B.23, subd. 1 sets forth allowable costs incurred for commitment hearings. For example, subpoenaed witnesses must be paid mileage and witness fees, examiners are entitled to payment for

services and travel, the travel and lodging costs to transport the patient to the hearing are allowed, and the patient's counsel is allowed "a reasonable sum for travel and for the time spent in court or in preparing for the hearing." *Id.* The subdivision continues to state which county shall bear such costs:

> (b) When the residence of the patient is found to be in another county, the committing court shall transmit to the county auditor a statement of the expenses of the taking into custody, confinement, examination, commitment, conveyance to the place of detention, and rehearing. The auditor shall transmit the statement to the auditor of the county of the patient's residence. The claim shall be paid as other claims against that county. If the auditor to whom this claim is transmitted denies the claim, he shall transmit it, together with his objections to the commissioner. The commissioner shall determine the question of residence and certify his findings to each auditor. If the claim is not paid within 30 days after certification, an action may be maintained on it in the district court of the claimant county.

*Id.* subd. 1(b).

Since a petition for commitment may be filed "in the probate court of the county of the proposed patient's residence *or presence*," Minn.Stat. § 253B.07, subd. 2 (emphasis added), commitment hearings may occur in a county other than where the patient resides. The statutory section relied on by the trial court merely establishes a procedure for the county in which the patient is present and from which he is committed to transfer the commitment hearing costs to the county of the patient's residence. The statute does not cover costs for future care. "When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn.Stat. § 645.16 (1984).

■ Even though the statute applies to commitment hearing costs, it also provides

for an ultimate determination of responsibility by the Commissioner. The statutory deference to the Commissioner to resolve questions of residence evidences the legislative delegation of these factual determinations to the agency. We do not agree with Isanti County's claim that allowing committing courts to order a bill for *hearing expenses* be sent to the county of a patient's residence implies any authority whatever to assign responsibility for future medical assistance benefits.

3. At oral argument, Isanti County also argued it is within the discretionary power of the trial court and this court to order future care be assigned to Ramsey County because of the equities involved in this matter. That claim is of no merit in view of the evident legislative intent and should be properly addressed to the legislature.

## DECISION

The Department of Public Welfare's 1975 decision, finding Isanti County responsible for Larson's medical assistance grant, is binding upon the trial court and parties. The trial court may not reverse the 1975 decision by relying on a statutory provision relating to commitment hearing costs. Neither the trial court nor this court has the discretionary authority to remedy claimed inequities here.

Affirmed in part and reversed in part.